## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| WADE MONTGOMERY, | |
|      Plaintiff, | |
|      v. | Case No. 15-cv-50098 |
| NEDRA CHANDLER; JOSH ANDREWS; JOSHUA ALBERTS; DANIEL ARTL; MICHAEL ATCHISON; QUENTIN BAILEY; EDDIE BAITY; RUSSELL BAKER; JASON BEARD; SHANE BOYSON; RODNEY BRADY; SCOTT BUZLAFF; BRETT CARNAHAN; LUKE CUNNINGHAM; MICHAEL EVANS; DUSTIN FORD; TJ FRANCIS; ANN GANGER; S.A. GODINEZ; DAVID GOMEZ; RICHARD GRAVES; PETER GREEN III; JOSH GRUNDER; DUSTIN HAGER; TRENT HANRAHAN; JASON HARLAN; LEROY HART; KELLY HERRICK; JOSHUA HORTON; LEONTA JACKSON; BRADY JACOBS; TOMASZ JANKOWSKI; CHAD JENKINS; ALEX JOHNSON; CRAIG JONES; NICK JONES; NICHOLAS KAYS; PAUL LAWSON; TYRUS LAZARD; BRIAN LEDBETTER; COLTON LOVE; NICHOLAS LUNON; GREG MANZANO; RAUL MARTINEZ; MARTIN MATHERLY; SCOTT MEYER; TRAVIS MOORE; MARK NEWMAN; SCOTT NODINE; KENNETH NUSHARDT; JEFF OELBERG; PHIL OSBORN; JOSHUA PHARES; JOSE PRADO SR.; TIM PRATER; CHRIS RENTERIA; LOUIS SAPIA; JEAN SOLBERG; NATE SPENCE; JACOB STARK; BEN STERCHI; WALDEMAR STRUGALA; CHRISTOPHER TERRY; DONALD THOMAS; JAMES THOMAS; SHAWN THRUSH; CHRIS TUTTLE; ADAM WALSH; LESLIE WARDEN; DALE WEIS; JASON WEYMOUTH; RYAN WOODS; ROD WORKMAN; DENNIS WOZNIAK; KEN YINGLING; JOSEPH YURKOVICH; CHRIS ZIERMAN; UNKNOWN MEMBERS OF TACTICAL TEAM KNOWN AS "ORANGE CRUSH"; and UNKNOWN SUPERVISORS, | Hon. Philip G. Reinhard<br><br>Hon. Iain D. Johnston<br><br>JURY TRIAL DEMANDED |
|      Defendants. | |

## FOURTH AMENDED COMPLAINT

Plaintiff Wade Montgomery, by and through counsel, complains against defendants Nedra Chandler; Josh Andrews; Joshua Alberts; Daniel Artl; Michael Atchison; Quentin Bailey; Eddie Baity; Russell Baker; Jason Beard; Shane Boyson; Rodney Brady; Scott Buzlaff; Brett Carnahan; Luke Cunningham; Michael Evans; Dustin Ford; TJ Francis; Ann Ganger; S.A. Godinez; David Gomez; Richard Graves; Peter Green III; Josh Grunder; Dustin Hager; Trent Hanrahan; Jason Harlan; LeRoy Hart; Kelly Herrick; Joshua Horton; Leonta Jackson; Brady Jacobs; Tomasz Jankowski; Chad Jenkins; Alex Johnson; Craig Jones; Nick Jones; Nicholas Kays; Paul Lawson; Tyrus Lazard; Brian Ledbetter; Colton Love; Nicholas Lunon; Greg Manzano; Raul Martinez; Martin Matherly; Scott Meyer; Travis Moore; Mark Newman; Scott Nodine; Kenneth Nushardt; Jeff Oelberg; Phil Osborn; Joshua Phares; Jose Prado Sr.; Tim Prater; Chris Renteria; Louis Sapia; Jean Solberg; Nate Spence; Jacob Stark; Ben Sterchi; Waldemar Strugala; Christopher Terry; Donald Thomas; James Thomas; Shawn Thrush; Chris Tuttle; Adam Walsh; Leslie Warden; Dale Weis; Jason Weymouth; Ryan Woods; Rod Workman; Dennis Wozniak; Ken Yingling; Joseph Yurkovich; Chris Zierman; Unknown Members of Tactical Team Known as "Orange Crush"; and Unknown Supervisors, as follows:

## Introduction

1.     In late April 2014, on a cold day, a tactical team known as "Orange Crush" conducted a shakedown of cells at Dixon Correctional Center ("Dixon"), an Illinois Department of Corrections ("IDOC") prison in Dixon, Illinois.  Rather than carry out a legitimate security procedure, however, Defendants threatened, sexually humiliated, and otherwise abused Mr. Montgomery and hundreds of other prisoners, destroyed his property, and gratuitously inflicted punishment for the sole purpose of causing humiliation and needless pain.  Mr. Montgomery

2

seeks compensatory and punitive damages for his injuries.

2.       For example, Mr. Montgomery and other prisoners at Dixon were subject to: a humiliating strip search in front of female officers; orders to touch their genitals and then use their unwashed hands to open their mouths; painfully tight handcuffing with their palms outward; orders to march from their housing units to another building at Dixon with their heads on the backs of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks; violent attacks by Defendant Orange Crush Officers when prisoners broke that formation; and orders to stand in a stress position for several hours. Throughout the shakedown, Defendant Orange Crush Officers hurled epithets at the prisoners, chanted "punish the inmate," and told them this was punishment for their sins.

3.       The shakedown was the direct result of unconstitutional policies and practices in place at the IDOC pursuant to which Orange Crush conducted a series of shakedowns at various IDOC prisons, not for any legitimate penological purpose, but for the purpose of inflicting pain and humiliation on prisoners entrusted to its care.

4.       The painful and humiliating shakedown inflicted physical injuries on Mr. Montgomery — including headache, dizziness, wrist pain, lower back pain, skin rash, and gastrointestinal virus—and emotional injuries—including severe embarrassment, fear, stress, trauma, and humiliation.

## Jurisdiction and Venue

5.       This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6.       Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

## Parties

7.      At all times relevant to the events at issue in this case, plaintiff Wade

Montgomery was a prisoner in the custody of the IDOC housed at Dixon.  Mr. Montgomery is

African American.

8.      Defendant Correctional Officers; Josh Andrews; Joshua Alberts; Quentin Bailey;

Eddie Baity; Jason Beard; Shane Boyson; Brett Carnahan; Luke Cunningham; Michael Evans;

Dustin Ford; Ann Ganger; Richard Graves; Peter Green III; Dustin Hager; Trent Hanrahan;

Jason Harlan; LeRoy Hart; Kelly Herrick; Joshua Horton; Brady Jacobs; Tomasz Jankowski;

Chad Jenkins; Alex Johnson; Nick Jones; Nicholas Kays; Tyrus Lazard; Brian Ledbetter; Colton

Love; Nicholas Lunon; Greg Manzano; Raul Martinez; Martin Matherly; Scott Meyer; Scott

Nodine; Kenneth Nushardt; Phil Osborn; Joshua Phares; Tim Prater; Chris Renteria; Louis Sapia;

Nate Spence; Jacob Stark; Ben Sterchi; Waldemar Strugala; Christopher Terry; Donald Thomas;

James Thomas; Shawn Thrush; Chris Tuttle; Adam Walsh; Dale Weis; Jason Weymouth; Ryan

Woods; Rod Workman; Dennis Wozniak; Ken Yingling; and Chris Zierman (together,

"Defendant Orange Crush Officers") were, at the time of the events at issue in this complaint,

IDOC employees; members of the IDOC tactical team commonly referred to as "Orange Crush";

and participants in the shakedowns that occurred at Dixon.  At all times relevant to the events at

issue in this case, these Defendants were acting under color of law and within the scope of their

employment with the IDOC.

9.      Defendants Daniel Artl, a member of IDOC's statewide Tactical Response Team;

Sgt. Russell Baker; Team Leader Scott Buzlaff; Commander TJ Francis; Team Leader Josh

Grunder; Lt. Craig Jones; Sgt. Paul Lawson; Lt. Travis Moore; Lt. Mark Newman; Sgt. Jeff

Oelberg; Sgt. Jose Prado Sr.; Lt. Jean Solberg; and Sgt. Leslie Warden were, at the time of the

events at issue in this complaint, IDOC supervisors; members or supervisors of the Orange Crush team; and participants in the shakedowns that occurred at Dixon. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

10. Defendants Unknown Members of Tactical Team Known as "Orange Crush" are employees of the IDOC and members of the Orange Crush team. Upon information and belief, they travel from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. At all times relevant to the events at issue in this case, Defendants Unknown Members of Tactical Team Known as "Orange Crush" were acting under color of law and within the scope of their employment with the IDOC.

11. At the time of the events at issue in this case, Defendant Nedra Chandler was the Warden at Dixon, and an employee of the IDOC. On information and belief, Chandler was responsible for supervising the shakedown at Dixon and was a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Chandler was acting under color of law and within the scope of her employment with the IDOC.

12. At the time of the events at issue in this case, Defendant Leonta Jackson was the Assistant Warden of Operations at Dixon and an employee of the IDOC. On information and belief, Defendant Jackson was responsible for supervising the shakedown at Dixon and was a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Defendant Jackson was acting under color of law and within the scope of her employment with the IDOC.

13. At the time of events at issue in this case, Defendant Rodney Brady was the Northern Region Tactical Commander for the IDOC and an employee of the IDOC. On

5

information and belief, Defendant Brady was responsible for supervising the shakedown at

Dixon and a supervisor in the operations chain of command during the shakedown. At all times

relevant to the events at issue in this case, Defendant Brady was acting under color of law and

within the scope of his employment with the IDOC.

14.     Defendant Joseph Yurkovich is the former Chief of Operations for the IDOC, and

was responsible for supervising all Orange Crush tactical teams and implementing, overseeing,

and supervising policies and practices executed by Orange Crush members. Defendant

Yurkovich acted as Command Staff with supervisory responsibilities during the shakedown. At

all times relevant to the events at issue in this case, Defendant Yurkovich was acting under color

of law and within the scope of his employment with the IDOC.

15.     Defendant Michael Atchison is the former Deputy Chief of Operations for the

IDOC, and acted as Command Staff with supervisory responsibilities during the shakedown. At

all times relevant to the events at issue in this case, Defendant Atchison was acting under color

of law and within the scope of his employment with the IDOC.

16.     At all times relevant to this case, Defendant David Gomez was the Northern

Region Deputy Director for the IDOC, and acted as Command Staff with supervisory

responsibilities during the shakedown. At all times relevant to the events at issue in this case,

Defendant Gomez was acting under color of law and within the scope of his employment with

the IDOC.

17.     Defendant Unknown Supervisors are the unknown supervisors responsible for

overseeing various aspects of the shakedown described in this pleading. Defendant Unknown

Supervisors include all supervisors in the operations chain of command during the shakedown;

all supervisors acting as Command Staff during the shakedown; and all IDOC regional

administrators responsible for overseeing or supervising any aspect of the shakedown described in this pleading.

18.     Defendant S.A. Godinez is the former Director of the IDOC.  He has been sued in his individual capacity.  At the time of events at issue in this case, Defendant Godinez was an employee of the IDOC and acted under color of law and within the scope of his employment.

### Background Facts

19.     In late April and early May 2014, Dixon was put on lockdown for approximately 15 days.  During the lockdown, Defendant Orange Crush Officers conducted a shakedown of each house at the facility.

20.     On April 21, 2014, Defendant Orange Crush Officers conducted a shakedown of Housing Unit 59, in which Mr. Montgomery then resided.

21.     Upon entering Housing Unit 59, Defendant Orange Crush Officers yelled loudly "get the fuck up!", and began making loud "whooping" noises while hitting their batons on the walls, tables, doors, and railings in the wing.

22.     Defendant Orange Crush Officers instructed Mr. Montgomery and the other men in Housing Unit 59 to keep their heads down and not to look at the officers' faces, and threatened the men with physical violence, segregation, withholding of medical care, and transfer to a maximum security facility if they did not comply.  Two Defendant Orange Crush Officers then lined up in front of each cell.

23.     The Defendant Orange Crush Officers took affirmative steps to conceal their identities from Mr. Montgomery and the other prisoners at Dixon, including concealing their faces with face shields and failing to wear nametags or another form of identification that would be visible to the prisoners.

7

24.     The Defendant Orange Crush Officers who lined up in front of Mr. Montgomery's cell, one of whom Mr. Montgomery recognized as Kelly Herrick yelled "get asshole naked!"  Once Mr. Montgomery was undressed, the Defendant Orange Crush Officers ordered him to stand by the open door to his cell; bend over while facing his cell (turning his back to the officers); spread his buttocks; and lift each foot off the ground.  The Defendant Orange Crush Officers then ordered Mr. Montgomery to face them, and to lift his genitals.  Next, the Defendant Orange Crush Officers ordered Mr. Montgomery to open his mouth using the same hands he had just used to touch his genitals and buttocks, threatening Mr. Montgomery with segregation if he did not comply.

25.     At least two Defendant Orange Crush Officers present in the housing unit during Mr. Montgomery's strip search were female.  The female officers witnessed Mr. Montgomery's and other male inmates' strip searches.

26.     When the Defendant Orange Crush Officers finished strip searching Mr. Montgomery, they ordered him to get dressed in pants, shirt, and shoes.  The Defendant Orange Crush Officers told Mr. Montgomery he could not wear any underwear.

27.     Once all the prisoners residing in Housing Unit 59 had been strip searched, Defendant Orange Crush Officers ordered the men to face the wall (with their backs to the officers) and to "keep [their] fucking heads down!"  Any prisoner who looked at the officers was slammed into the wall and told to "put [his] fucking head down!"

28.     Defendant Orange Crush Officers then handcuffed Mr. Montgomery and the other men in a particularly painful way: with the palms of their hands facing outward and their thumbs pointed up to the sky.  The handcuffs were extremely tight, injuring Mr. Montgomery's wrists, and eliciting complaints from him and other prisoners.  Defendant Orange Crush Officers

8

responded to Mr. Montgomery's complaints by telling him to "shut the fuck up!" and "keep [his] fucking head down!"; and they threatened him with segregation if he did not comply.

29.     Mr. Montgomery and the other men were ordered to line up and told to keep their heads down.  Defendant Orange Crush Officers then lined up next to the prisoners, hitting their batons in their hands, and chanting "punish the inmate."  This went on for several minutes.

30.     Once the chanting stopped, Defendant Orange Crush Officers ordered the prisoners to stand so that one man's genitals were in direct contact with the buttocks of the man ahead of him in line—a position referred to by Defendant Orange Crush Officers as "Nuts to Butts."  Defendant Orange Crush Officers ordered each prisoner to straighten his legs while keeping his back bent over at a 90-degree angle onto the prisoner in front of him.  This had the effect of forcing the men to place their genitals directly against the buttocks of the men in front of them.  The officers then ordered the prisoners, using several epithets, to march in that formation from their housing wing to the gym at the facility.  As the men began marching, the officers yelled that they didn't "want to see any fucking daylight" between any of the prisoners in line.

31.     The march from the housing wing to the gym was long and painful.  Each time a prisoner's head came off the back of the prisoner in front of him, officers responded by slamming the prisoner's head into the back of the prisoner in front of him.  Some prisoners were violently yanked out of the line, choked, and pulled to the ground while other officers jabbed them in their backs with batons.  Each time this occurred, the line would stop moving.  The frequent starts and stops of the procession, as well as the inherent difficulty of maintaining perfect contact with each other, forced several prisoners to break contact with the prisoners in front of them, causing them to be attacked by the officers.  Moreover, the prisoners were not

permitted to wear any outerwear, and were therefore exposed to the cold weather throughout the march.

32.     When the procession of prisoners arrived at the gym, Defendant Orange Crush Officers ordered them to stand facing the wall with their heads down.  They remained handcuffed.  Some officers then left the gym.  Defendant Orange Crush Officers Mark Andres, Trent Hanrahan, Chad Jenkins, Scott Meyer, and others, however, remained in the gym with the prisoners.

33.     The prisoners remained standing in this stress position for several hours.  During that time, Defendant Hanrahan yelled at the prisoners: "This is punishment for all your sins!"  He ordered the prisoners not to ask for medical attention or water because none would be provided, and not to ask to use the bathroom because the request would be denied.  He further told the prisoners that if their handcuffs were too tight, they would have to "be a man and take it or get dragged to seg[regation]!"

34.     When Mr. Montgomery was finally permitted to use the bathroom, Defendant Orange Crush Officers Chad Jenkins and Scott Meyer refused Mr. Montgomery's request to remove or loosen his handcuffs.  Mr. Montgomery was therefore forced to defecate while tightly handcuffed, which caused him to contaminate his body, hands, and pants with feces (as he had previously been forbidden from wearing underwear).  Jenkins and Meyers subsequently refused Mr. Montgomery's request for soap to wash his hands, instead forcing Mr. Montgomery to return to the gym and resume standing in the stress position without properly washing his hands and in his soiled clothing.  Mr. Montgomery later learned that Defendant Orange Crush Officers had agreed to remove the handcuffs from several white inmates so that they could use the bathroom.

35.     Later, Mr. Montgomery was served breakfast, which he was forced to eat without

10

washing his hands.  As a result, Mr. Montgomery ingested fecal matter, causing him to suffer gastrointestinal illness following the shakedown.

36.     After several hours, the other Defendant Orange Crush Officers returned.  They lined up the prisoners in the same formation as before, and again slammed their heads into the backs of the prisoners in front of them.  They again ordered the prisoners to march in that formation back to their housing wing.  Just as before, if a prisoner broke the line by lifting his head off the back of the person in front of him, Defendant Orange Crush Officers reacted with violence.

37.     Defendant Orange Crush Officers laughed at and taunted the prisoners throughout the entire march to and from the gym.

38.     When the prisoners at last returned to their housing wing, Mr. Montgomery found his cell had been "tossed."  Mr. Montgomery, like many other prisoners, found that non-contraband items had been taken, including legal documents and property he had legitimately purchased from the commissary.  Although IDOC policies require staff to complete "shakedown slips" to document any property taken from a prisoner, Mr. Montgomery found that the shakedown slip he received contained an inaccurate account of what had been taken and obscured the names of the officers who had confiscated the property.  Upon information and belief, this was done intentionally, as policy, to conceal the identity of Defendant Orange Crush Officers who had participated in the shakedown.

39.     Mr. Montgomery suffered physical injuries as a result of the shakedown, including severe headache, dizziness, lightheadedness, blurred vision, severe pain in his neck and lower back caused by the march and stress test, and skin rash and gastrointestinal illness caused by his inability to clean his hands and body after using the bathroom.  Mr. Montgomery

11

complained about these injuries to the officers during the shakedown and march, and upon return to his cell. But he was denied medical attention.

40.　　On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown procedures in April and May 2014 at several other IDOC facilities pursuant to a policy or practice implemented, overseen, and encouraged by IDOC supervisors, including Defendants Godinez, Yurkovich, and Chandler.

## <u>COUNT I</u>
### 42 U.S.C. § 1983 – Cruel & Unusual Punishment (Eighth Amendment)

41.　　Mr. Montgomery incorporates each paragraph of this complaint as if fully restated here.

42.　　As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on Mr. Montgomery. They did so intentionally, wantonly, and/or with malice.

43.　　Alternatively, Defendants knew the risk of harm that their misconduct posed to Mr. Montgomery and nevertheless acted with deliberate indifference in executing the shakedown at Dixon.

44.　　As a result of Defendants' unjustified and unconstitutional conduct, Mr. Montgomery suffered pain, emotional distress, and injuries.

45.　　The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Montgomery's rights.

46.　　Mr. Montgomery's injuries were proximately caused by the policies and practices of the IDOC Defendants.

47.　　On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown at Dixon pursuant to a policy or practice implemented and

overseen by Defendant Yurkovich and other IDOC supervisors regarding shakedowns at IDOC facilities. Accordingly, Defendant Yurkovich, who was responsible for supervision and oversight of Orange Crush, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of Defendant Orange Crush Officers, and failed to adequately punish and discipline prior instances of similar misconduct. Defendant Yurkovich violated Mr. Montgomery's rights by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

48.     On information and belief, Defendants Godinez, Chandler, and Yurkovich had notice of widespread policies and practices of Defendant Orange Crush Officers and other members of Orange Crush, pursuant to which prisoners were subjected to unconstitutional and tortious acts of violence and humiliation, as described more fully above. Despite knowledge of these problematic policies and practices, these Defendants did nothing to ensure that prisoners at Dixon were treated humanely and in accordance with the rights afforded to them by the United States Constitution. These widespread policies and practices were allowed to flourish because Defendants Godinez, Chandler, and Yurkovich directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of Orange Crush team members. In this way, Defendants Godinez, Chandler, and Yurkovich violated Mr. Montgomery's rights by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

49.     The above-described policies and practices were able to exist and thrive because Defendants Godinez, Chandler, and Yurkovich were deliberately indifferent to the problem, thereby effectively ratifying it.

13

50. Mr. Montgomery's injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

51. Mr. Montgomery seeks actual and punitive damages for Defendants' violation of his constitutional rights.

**COUNT II**
**42 U.S.C. § 1983 – Violation of Equal Protection Clause (Fourteenth Amendment)**

52. Mr. Montgomery incorporates each paragraph of this complaint as if fully restated here.

53. As described more fully above, Defendant Orange Crush Officers, acting under color of law, intentionally and without justification, refused to remove Mr. Montgomery's handcuffs so that he could use the bathroom, while agreeing to remove the handcuffs of similarly-situated white inmates so that those inmates could use the bathroom. Through these actions, Defendant Orange Crush Officers singled out Mr. Montgomery as an African American inmate and discriminated against him because he is African American.

54. Defendants' actions deprived Mr. Montgomery of his right to equal protection under the law, in violation of the Fourteenth Amendment to the United States Constitution.

55. As a direct and proximate result of Defendants' actions alleged in this Count, Mr. Montgomery suffered damages.

56. Mr. Montgomery seeks actual and punitive damages for Defendants' violation of his constitutional rights.

**COUNT III**
**42 U.S.C. § 1983 – Conspiracy**

57. Mr. Montgomery incorporates each paragraph of this complaint as if fully restated

14

here.

58.     Defendants reached an agreement among themselves to deprive the prisoners

housed at Dixon of their constitutional rights and to protect one another from liability for

depriving the prisoners of their rights, as described in this complaint.

59.     In furtherance of the conspiracy, each co-conspirator committed overt acts and

was an otherwise willful participant in joint activity.

60.     The misconduct described in this Count was undertaken intentionally, with

malice, and/or with reckless indifference to Mr. Montgomery's rights.

61.     As a direct and proximate result of the illicit prior agreement referenced above,

Mr. Montgomery's rights were violated and he suffered injuries, including pain, suffering, and

emotional distress.

62.     These injuries were caused by IDOC employees, including but not limited to the

individually named Defendants, who acted pursuant to the policies and practices described

above.

63.     Mr. Montgomery seeks actual and punitive damages for Defendants' violation of

his constitutional rights.

## COUNT IV
### 42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)

64.     Mr. Montgomery incorporates each paragraph of this complaint as if fully restated

here.

65.     As described more fully above, Defendants each had a reasonable opportunity to

prevent the violation of Mr. Montgomery's constitutional rights had they been so inclined.  They

failed to do so.

66.     Defendants' actions were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Montgomery's rights.

67.     As a direct and proximate result of Defendants' misconduct, Mr. Montgomery's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

68.     Mr. Montgomery's injuries were caused by IDOC employees, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

69.     Mr. Montgomery seeks actual and punitive damages for Defendants' violation of his constitutional rights.

**<u>COUNT V</u>**
**Intentional Infliction of Emotional Distress**

70.     Mr. Montgomery incorporates each paragraph of this complaint as if fully restated here.

71.     In the manner described more fully above, Defendants engaged in extreme and outrageous conduct.  Defendants' actions were rooted in an abuse of power or authority.

72.     Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability the conduct would inflict severe emotional distress, and with reckless disregard of that probability.

73.     Defendants' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Montgomery's rights.

74.     Defendants undertook the misconduct described in this Count within the scope of their employment.

75.     As a direct and proximate result of this misconduct, Mr. Montgomery experienced injuries, severe emotional distress, and suffering.

16

WHEREFORE, Plaintiff Wade Montgomery respectfully requests this Court enter a judgment in his favor and against Defendants awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Wade Montgomery hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated:  January 26, 2018                    Respectfully submitted,

                                            WADE MONTGOMERY

                                            By: */s/ Alison R. Leff* _____
                                                 One of His Attorneys

                                            Timothy E. Kapshandy
                                            Alison R. Leff
                                            SIDLEY AUSTIN LLP
                                            1 S. Dearborn St.
                                            Chicago, IL 60603
                                            (312) 853-7000
                                            tkapshandy@sidley.com
                                            aleff@sidley.com

                                            *Attorneys for Plaintiff*

17